FILED
2022 Mar-23 PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

PATRICK WALSH and ALEXANDRA WALSH,

Plaintiffs

vs.

PACIFIC INDEMNITY COMPANY,

Defendant

Case No. 4:20-cv-00510-HNJ

**MEMORANDUM OPINION AND ORDER**

This case proceeds before the court on Patrick and Alexandra Walsh's motion for leave to amend their complaint based upon newly discovered evidence. (Doc. 73). As explained below, this court's prior order precludes any new claims for fraud, and the Walshes have not demonstrated good cause for failing to request leave to amend within the Scheduling Order deadline for amending pleadings. Therefore, the court will **DENY** their motion.

**BACKGROUND**

On March 26, 2020, Plaintiffs Patrick and Alexandra Walsh filed a Complaint in the Circuit Court of Etowah County, Alabama, asserting state law claims for bad faith, fraud, and negligent training and supervision against "Chubb," Pacific Indemnity

Company, Lisa Darr, Jonathan Beauchamp, George Clark, and 20 fictitious Defendants. (Doc. 1-1). On April 15, 2020, Defendants removed the case to this court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Doc. 1).[1]

On July 14, 2020, this court entered a Scheduling Order requiring the Walshes to file any amended pleadings by August 1, 2020. (Doc. 19, ¶ 1).[2] On October 21, 2020, the court entered a memorandum opinion and order partially granting Defendants' motion to dismiss the Walshes' original Complaint and partially granting the Walshes' motion to file an Amended Complaint. The court dismissed all claims against the fictitious defendant "Chubb," allowed the Walshes to assert their bad faith and breach of contract claims only against Pacific Indemnity, dismissed the fraud claim for failure to plead with particularity, and dismissed the negligent training and supervision claim against all Defendants. (Doc. 28).

On November 4, 2020, the Walshes filed an Amended Complaint pursuant to the October 21 order, asserting bad faith against Pacific Indemnity (Count One), fraud against Chubb & Sons, Clark, Darr, and Beauchamp (Count Two), and breach of contract against Pacific Indemnity (Count Three). (Doc. 29). On March 11, 2021, the

---

[1] The Walshes are citizens of Alabama, Defendants all reside in states other than Alabama, and the Walshes demanded damages in excess of $75,000, thereby satisfying the diversity jurisdictional requirements of 28 U.S.C. § 1332(a). (Doc. 1, ¶¶ 7-12; Doc. 1-1, ¶¶ 29, 48, 56-57, 72-73, 82-83).

[2] The court twice amended that Scheduling Order, but it never altered the deadlines for amending pleadings. (*See* Docs. 46, 53).

court dismissed all claims against individual defendants Lisa Darr, Jonathan Beauchamp, and George Clark, pursuant to the parties' Joint Stipulation of Dismissal. (Doc. 50).

On April 28, 2021, the court partially granted Defendants' motion to dismiss the Amended Complaint and dismissed the Walshes' fraud claim with prejudice. The court found that the Walshes failed to aver a timely fraud claim against Defendant Chubb & Sons with the particularity required by Federal Rule of Civil Procedure 9(b). Nonetheless, the pleadings established such a timely filing for the Walshes' bad faith claim, thereby facilitating the claim's circumvention of the motion to dismiss. (Doc. 51).

On June 21, 2021, the revised deadline for completing discovery expired. (Doc. 53, ¶ 2). On July 6, 2021, after the completion of discovery, Pacific Indemnity filed a motion for summary judgment on the Walshes' remaining claims for breach of contract and bad faith. (Doc. 55).[3] On August 13, 2021, the Walshes filed a response to the motion for summary judgment (Doc. 71), and on August 27, 2021, Pacific Indemnity filed a reply. (Doc. 72). The motion for summary judgment remains pending.

[3] Both "Defendants" purport to jointly file the motion for summary judgment (*see* Doc. 55, at 1). However, no claims remain pending against Defendant Chubb & Sons, as the court dismissed the Walshes' fraud claim, and it found the Walshes could only assert their breach of contract and bad faith claims against Pacific Indemnity. (*See* Doc. 28, at 26; Doc. 51, at 8 n.6).

On September 15, 2021, the Walshes filed their motion for leave to further amend their Complaint based upon newly discovered evidence. (Doc. 73). As discussed in more detail later, the Walshes attached a deposition transcript to their motion (Doc. 73-1), but they did not attach a proposed Amended Complaint. On September 29, 2021, Pacific Indemnity filed a response to the motion to amend (Doc. 75),[4] and on October 6, 2021, the Walshes filed a reply. (Doc. 76).

## DISCUSSION

The Walshes assert the June 14, 2021, deposition of Daniel Jaeger, Pacific Indemnity's corporate representative, revealed new evidence of fraud and/or bad faith that warrants filing an amended complaint to assert new allegations of fraud and/or bad faith.[5]

Specifically, during Jaeger's deposition, the Walshes' attorney questioned him about the practice of sending letters to clients informing them that the company would place their claim on inactive status. Jaeger stated:

---

[4] Again, both Defendants purport to jointly file the response to the motion to amend, but as discussed in the previous footnote, this case no longer sustains any viable claims against Chubb & Sons.

[5] As the Walshes did not append a proposed Amended Complaint to their motion, the court cannot determine the precise cause of action or additional allegations they propose to assert, or the Defendant or Defendants against whom the Walshes propose to assert the claims. Their motion to amend mentions both fraud and bad faith. (*See* Doc. 73, ¶ 7 ("The fraudulent records practice of selective preservation and 'cut-and-paste' is necessary as a legal count for the jury to understand the totality of the Plaintiffs['] claims and the facts alleged."), ¶ 14 ("This systematic means of delaying, discounting and denying claims is clear and was in 'bad faith' and following Mr. Jaeger['s] deposition the fraudulent pattern has surfaced.").

> I think what we did is we communicated to the insured what was required in order for them to perfect a claim and we told them what actions would be taken if they were unable to produce the documents that we requested.
>
> We also explained that if the file was closed or placed on inactive status and they produced the documents after that, that we would reopen the claim and evaluate it.

(Doc. 73-1, at 74).

In addition, the following exchange occurred between Jaeger and the Walshes' attorney regarding the company's production of a client's claim file:

> Q. So the Pacific Indemnity position is that you would produce whatever the insured has submitted in hopes of a claim being approved? Is that what you're saying, only what the insured has submitted?
>
> A. You're asking me several different questions. You've asked me, one, what we would produce to an insured upon their request and then you –
>
> Q. That was the question.
>
> A. Okay. And if an insured requested a copy of their claim file, we would produce to them those materials that they had produced to us during the course of the investigation, for example, emails or appraisals or receipts or documents, a copy of their proof of loss, those types of materials, but we would not produce our internal proprietary investigative materials. And I think that the second question was what?
>
> Q. Well, let me ask off of that response there. When you say "proprietary," what do you mean by that?
>
> A. Our work product.
>
> Q. Does the corporate entity maintain every email that's generated as part of a claims process?

> A. Well, there's two specific ways that emails are maintained. One of them would be in the claim file, which at the time this was occurring, back in 2013, 2014, 2015 and the beginning of 2016, most of those emails were manually sent to the claim file, meaning an individual had to either send them to the claim file for attachment or cut-and-paste them into the claim file. But we also have an email system that backs up emails that are sent.

(*Id.* at 34-35). Jaeger further explained that, during the relevant time period, each employee could decide which communications to place into the file:

> So typically, anything that is material or substantive gets put in the claim file. For example, if I sent you an email saying Mr. Garmon, we have a call set up for 8:00 a.m. tomorrow morning, that might not go in the claim file. But if I sent you a substantive email that had something to do with the claim, then that typically would go in the claim file.

(*Id.* at 37). If an employee did not cut and paste an email that later became relevant to pending litigation, the company could recover the email from its servers. (*Id.*).

The Walshes' attorney later questioned Jaeger about a note former Defendant George Clark placed in the Walshes' claim file after he reached out to Ms. Walsh "to try to obtain a statement from her regarding the facts and circumstances of the loss." (*Id.* at 86). The file note stated: "Hello, Mr. Clark. I regret I was unable to answer the phone today as I'm still recouping. In another week, I should be strong enough for meeting and phone calls. Regards." (*Id.* at 85-86). When asked how Clark generated that note in the system, Jaeger stated: "It appears that he created a note and he titled it Email from an Insured and then he cut-and-paste what they put in that email into the claim file." (Doc. 73-1, at 86).

The Walshes assert this evidence reveals "both Defendants[6] had an accepted practice of fraudulent record keeping, record creation and/or record preservation wherein the Defendants did not preserve the entire file when making claims decisions. These practices were fraudulently concealed." (Doc. 73, ¶ 5). According to the Walshes, "[t]he fraudulent records practice of selective preservation and 'cut-and-paste' is necessary as a legal count for the jury to understand the totality of the Plaintiffs['] claims and the facts alleged," as the parties dispute whether the Walshes timely provided a requested Sworn Statement during the claims investigation process. (*Id.* ¶ 7). Moreover, "[a]ll other written discovery denied" the existence of this allegedly fraudulent records practice, "and there was no prior opportunity to discover the same prior to June 14, 2021." (*Id.* ¶ 6). The Walshes further claim they did not previously know

> with this newly discovered specificity that the Defendants create a "selective" claim file electing to preserve parts of what is received, pasting records of some phone contacts and not others and otherwise fraudulently stacking the claims file as if same is a true and accurate reflection of submitted material and claimant contact.

(*Id.* ¶ 10).

As an initial matter, the Walshes cannot file an amended complaint asserting a

[6] As discussed, only claims against Defendant Pacific Indemnity remain pending. The Walshes' filings do not make clear whether they propose to assert their new claims against only Pacific Indemnity, or whether they also seek to rejoin Chubb & Sons as a Defendant.

fraud claim because the court previously dismissed their fraud claim with prejudice. *See Daker v. Comm'r, Georgia Dep't of Corr.*, 694 F. App'x 765, 767 (11th Cir. 2017) ("A dismissal with prejudice bars the litigant from refiling the same complaint."); *Griham v. United States*, 389 F. Supp. 3d 986, 992 (N.D. Ala. 2019), *aff'd*, 842 F. App'x 425 (11th Cir. 2021) (quoting *With Prejudice*, Black's Law Dictionary (11th ed. 2019)) ("It has long been recognized that a dismissal 'with prejudice' denotes the adjudication of a claim 'in a way that finally disposes of a party's claim and bars any future action on that claim.'").[7]

To the extent the Walshes seek to add any other cause of action, the Scheduling Order deadline for the Walshes to amend their pleadings expired on August 1, 2020 (Doc. 19, ¶ 1), more than a year before they filed their motion for leave to amend. Consequently, Federal Rule of Civil Procedure 16 governs the motion. Under Rule 16, a "schedule may be modified only for good cause and with the judge's consent." Fed.

---

[7] Furthermore, the new averments do not convincingly evince fraudulent conduct. As discussed in prior opinions, "misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted upon by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101. Regardless whether the opposing party rendered the representation willfully, recklessly, or mistakenly, a plaintiff must allege a defendant made a false representation regarding a material fact; the plaintiff relied upon the false representation; and the plaintiff suffered actual injury as a result of that reliance. *Aliant Bank, a Div. of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 928 (Ala. 2017) (citing *Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So. 2d 580, 581 (Ala. 1994)).

The facts reviewed recounted from Jaeger's deposition do not reveal any false representations. Jaeger's statements regarding Pacific Indemnity's practices vis-a-vis a claim placed upon inactive status; the provision of internal communications and materials regarding claims investigations; email maintenance; appending notes to files; and copying snippets of emails to files, do not portray the lodging of any false representations, in particular any that the Walshes relied upon.

R. Civ. P. 16(b)(4); s*ee also Smith v. Sch. Bd. Of Orange Cty.,* 487 F.3d 1361, 1366 (11th Cir. 2007) (citing Fed. R. Civ. P. 16(b); *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998)) ("[W]here a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted."). The good cause inquiry typically focuses upon the diligence of the party seeking the extension. *See Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note)) ("This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end."). The Walshes bear the burden of demonstrating good cause under Rule 16 for failing to request amendment within the Scheduling Order deadline. *See ConSeal Int'l Inc. v. Neogen Corp.*, No. 19-CV-61242, 2020 WL 2494596, at *6 (S.D. Fla. May 14, 2020) (citing *Northstar Marine, Inc. v. Huffman*, No. 13-0037-WS-C, 2014 WL 3720537, *3 (S.D. Ala. July 28, 2014); *TIC Park Ctr., 9 LLC v. Cabot, No.* 16-24569-CIV, 2018 WL 4828435, at *4 (S.D. Fla. Aug. 28, 2018)) ("The burden of establishing good cause [and] diligence rests squarely on the party seeking relief from the scheduling order.").

The Walshes have not satisfied their burden of demonstrating good cause. Though the Walshes' attorney deposed Jaeger on June 14, 2021, the Walshes delayed

three months, until September 15, 2021, before requesting leave to amend. In the meantime, the discovery and dispositive motion deadlines expired, and Pacific Indemnity filed a motion for summary judgment, all by July 6, 2021. On August 13, 2021, the Walshes filed a response to Pacific Indemnity's motion for summary judgment, and on August 14, 2021, they submitted Jaeger's deposition transcript as additional evidence in support of their response. As the Walshes knew of Jaeger's deposition testimony for three months before requesting leave to file an amended pleading, and they even relied upon that testimony to oppose Pacific Indemnity's motion for summary judgment one month before requesting leave to amend, they did not act diligently in seeking leave to amend. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009) ("The lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes. That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.").

Moreover, Jaeger's testimony did not present any new information. *See Sumter Elec. Membership Corp. v. Forestall Co. Inc.*, No. 1:19-CV-88 (LAG), 2020 WL 12660745, at *2 (M.D. Ga. Dec. 8, 2020) (citing *Sosa*, 133 F.3d at 1419) ("Good cause may be found where the proposed amendment is based on newly discovered evidence."). During his March 5, 2021, deposition, George Clark also testified regarding the

computer system requiring employees to cut and paste emails and other documents into the official claim file, and he acknowledged human error sometimes resulted in the omission of certain emails or other documents from the claim file. (Doc. 75-1, at 5-13).

The court notes the Walshes may rely upon their tendered allegations to support their remaining claims. Indeed, in their summary judgment response brief the Walshes discussed Jaeger's testimony regarding the practice of cutting and pasting emails and other documents into the claim file. (Doc. 70-1, at 12-13). Thus, the Walshes retained the opportunity to craft substantive arguments based upon Jaeger's testimony.

Finally, though the Rule 16 good cause inquiry focuses upon the diligence of the moving party, not upon potential prejudice, Pacific Indemnity would suffer prejudice if the court permits the Walshes to amend their complaint at this late stage in the litigation, as the parties have completed discovery and invested time in summary judgment briefing. *See Schiller v. Viacom, Inc.*, No. 1:15-CV-22129-UU, 2016 WL 11593113, at *3 (S.D. Fla. Mar. 14, 2016) ("Plaintiff's untimely Motion would also cause undue delay and undue prejudice to Defendants," as the parties had "engaged in extensive discovery and motion practice, including dispositive motions," and the court had set the case for trial).

**CONCLUSION AND ORDER**

For the reasons discussed herein, the court **DENIES** the Walshes' motion for leave to amend their complaint based upon newly discovered evidence.

**DONE** and **ORDERED** this 23rd day of March, 2022.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE